















JAH   3/5/03   8:55

3:00-CV-02268   SAFARI LAND LTD INC V. HELLWEG INTL PTY LTD

*79*

*O.*

FILED

03 MAR -4 PM 1:56

CLERK, U.S. DIST. CT.
SOUTHERN DISTRICT OF CALIF.

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFARI LAND LTD., INC., <br><br> Plaintiff, <br><br> vs. <br><br> HELLWEG INTERNATIONAL, PTY. LTD. OF AUSTRALIA, and HELLWEG AMERICA'S LAW ENFORCEMENT SALES, INC., <br><br><br> Defendants | CASE NO. 00-CV-2268-IEG (AJB) <br><br> **ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; and (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. Nos. 40, 45, 55, 61, 62, 77.] |

Presently before the Court are cross motions for partial summary judgment in the above-captioned case. Plaintiff Safari Land Ltd., Inc. has filed a motion for partial summary judgment on infringement; defendants Hellweg International, Pty. Ltd. of Australia and Hellweg America's Law Enforcement Sales, Inc. have filed a motion for partial summary judgment of noninfringment. For the reasons stated below, the Court (1) grants plaintiff's motion for partial summary judgment and (2) denies defendants' motion for partial summary judgment.

## I.    Background

This is a patent infringement case involving a gun holster. Plaintiff Safari Land Ltd. ("Safari Land") owns a patent that describes a handgun holster. Defendants Hellweg International Pty. Ltd. of Australia and Hellweg Americas Law Enforcement Sales, Inc. (collectively, "Hellweg") are manufacturers and sellers of the accused Model No. 2001 gun holster, respectively.

1

79

**A.      The '980 Patent**

Safari Land is a California corporation that owns United States Patent No. 4,694,980 ("the '980 patent"), which describes a gun holster.[1]  The '980 patent sets forth fifteen claims.

The '980 patent describes a handgun holster designed to prevent withdrawal of a handgun by an assailant--especially from the front of the wearer.  The '980 patent attempts to achieve this through an arrangement of straps and other features that prevent anyone other than the wearer from withdrawing the handgun.  The basic content of the '980 patent is best understood by examining the plain language of claim 1, which is one of the '980 patent's two independent claims.[2]

**1.      Claim 1**

As the Court observed in its <u>Markman</u> ruling, it is useful to conceptualize the '980 patent as including five basic features.

The first portion of claim one describes the holster's main body, which is comprised of two sidewalls.  One sidewall is close to the wearer's side, and the other sidewall is slightly further from the wearer's side.  The sidewalls are joined along the forward portion of the sidewalls as well as

---

[1]The holster was designed by William H. Rogers who is also the original recipient of the '980 patent; the Patent and Trademark Office ("PTO") issued the patent on September 22, 1987.  '980 patent. Safari Land subsequently acquired the patent through assignment.

[2]Claim 1 states:

In a holster for a handgun and attachable to a belt, the holster having with respect to a front and back of a wearer of the holster inner and outer spaced substantially rigid sidewalls joined together along the forward and lower rear portions thereof to define an inner expandable cavity and an  open expandable top and upper rear portions for receiving a handgun therein and for removing a handgun therefrom, the improvement comprising a first strap portion extending upwardly from adjacent said forward portion of said outer sidewall and attached by a releasable first fastener to a second strap portion extending upwardly from adjacent said forward portion of said inner sidewall and including a thumb engaging first tab adjacent said first fastener; a third elongated strap extending laterally across and affixed to said outer and inner sidewalls adjacent said open expandable top, and upper rear portions, a releasable second fastener joining ends of said third strap adjacent a rear portion of said inner sidewall with a middle finger engaging second tab on said third strap adjacent said second fastener, slidable means attaching one end of said third strap to said inner sidewall for limited expansion of said open expandable top and upper rear portions and of said inner cavity when said second fastener is opened by a middle finger engaging said second tab and a thumb engages said first tab to open said first fastener, and means in said inner cavity to engage a portion of a handgun in the holster to resist upward withdrawing of a handgun.  '980 Patent, col. 6, lines 42 to col. 7, line 2.

1  along the lower rear portion of the sidewalls.[3]  The joining of the of the '980 patent's sidewalls

2  along the forward and lower rear portions forms an oval-shaped cavity in which a wearer can place

3  a pistol.

4        Indeed, as the first portion of claim one states:

5

6  In a holster for a handgun and attachable to a belt, the holster having with respect to a front
   and back of a wearer of the holster inner and outer spaced substantially rigid sidewalls

7  joined together along the forward and lower rear portions thereof to define an inner
   expandable cavity and an open expandable top and upper rear portions for receiving a
   handgun therein and for removing a handgun therefrom, the improvement comprising [...]

8  See '980 patent, Col. 6, lines 42-50.  See also '980 patent, Figure 2 (depicting embodiment of

9  holster from behind the wearer, where inner sidewall (11)[4] joins outer sidewall (40)); Id. Figure 8

10  (depicting embodiment of holster with outer sidewall nearest viewer); Id., Figure 9 (depicting

11  embodiment of holster with inner sidewall nearest viewer); Id., Figure 1 (depicting embodiment of

12  holster from above, with roughly oval-shaped cavity formed by joining of inner sidewall (11) and

13  outer sidewall (40)).

14        The second portion of claim 1 describes a pair of straps that extend in an arch-like shape

15  over the top of the holster.  The "first" strap extends upward from the outer sidewall.  The

16  "second" strap extends upward from the inner sidewall.  These two straps arch over the top of a

17  pistol placed in the holster.  The straps attach with a fastener.  The holster wearer, however, can

18  disengage the fastener by pressing a tab that is adjacent to the fastener's thumb.

19        The second portion of claim one describes this section as:

20  a first strap portion extending upwardly from adjacent said forward portion of said outer

21  sidewall and attached by a releasable first fastener to a second strap portion extending
   upwardly from adjacent said forward portion of said inner sidewall and including a thumb

22  engaging first tab adjacent said first fastener;

23  See '980 patent, Col. 6, lines 50-56.  See also '980 patent, Figure 3 (depicting embodiment of

24  holster with "first" strap (22) extending over top of pistol); id., Figure 2 (depicting embodiment of

25  holster with "first" strap (22) meeting "second" strap (35) at fastener (20), with adjacent tab (21));

26  _____

27  [3]Forward refers to the direction the wearer is facing.  Rear refers to the opposite direction; that
   is, the direction behind the wearer.

28  [4]The numbers in parentheses refer to the numbers that appear in the figures that accompany the
   '980 patent.

3

00CV2268

id., Figures 11 and 12 (depicting embodiment of holster after holster wearer's thumb disengaged "first" and "second" straps by pressing tab (21) with thumb, thereby unfastening fastener (20).

The third portion of claim one describes a "third" strap which extends laterally around the body of the holster, in the manner of a belt around a person's waist. The two ends of the third strap meet near the rear portion of the inner sidewall. The two ends of the third strap are joined by a fastener. The holster wearer can disengage this fastener by pressing on an adjacent tab with his or her middle finger.

The third portion of claim one describes the structure:

a third elongated strap extending laterally across and affixed to said outer and inner sidewalls adjacent said open expandable top, and upper rear portions, a releasable second fastener joining ends of said third strap adjacent a rear portion of said inner sidewall with a middle finger engaging second tab on said third strap adjacent said second fastener,

See '980 patent, col. 6, lines 56-62. See also '980 patent, Figure 4 (depicting embodiment of holster with two ends of "third" strap (14) encircling body of holster and meeting at fastener (18) with adjacent tab (19)); id., Figure 1 (depicting embodiment of holster from above, with third strap (14) laterally encircling body of holster, meeting at fastener 18 and tab 19 near the rear portion of inner sidewall).

The fourth portion of claim one describes a "slideable means"--essentially a slot cut into the lateral third strap that is adapted to slide along a pin that protrudes from the side of the holster. When the holster wearer unfastens the third strap with his or her middle finger, the slot and pin (or "slideable means") allows for limited expansion of the third strap. This slight expansion facilitates removal of the pistol from the holster.

The fourth portion of claim 1 describes the function of this structure:

slidable means attaching one end of said third strap to said inner sidewall for limited expansion of said open expandable top and upper rear portions and of said inner cavity when said second fastener is opened by a middle finger engaging said second tab and a thumb engages said first tab to open said first fastener,

See '980 patent, col. 6, lines 62-68. See also '980 patent, Figure 4 (depicting embodiment of holster with slideable means shown as slot (16) cut into third strap (14), and adapting with pin or screw (17); id., Figure 9 (same); id., Figure 2 (same).

The fifth portion of claim 1 describes a "means in said inner cavity," which is a ledge or

4

00CV2268

protrusion within the holster. The ledge or protrusion blocks a pistol from being pulled straight up and out of the holster. The ledge or protrusion requires the holster wearer to tilt the pistol to allow the pistol to bypass the blocking ledge or protrusion. Thus, in addition to the first, second, and third straps, the "means in said inner cavity" provides an additional defense against an assailant who attempts to pull a pistol up and out of the holster.

The fifth portion of claim 1 describes this function of the structure:

> means in said inner cavity to engage a portion of a handgun in the holster to resist upward withdrawing of a handgun.

See '980 patent, col. 6, line 68 to Col. 7, line 2. See also '980 patent, Fig. 5 (depicting embodiment of "means in said inner cavity" as being a molded ledge (27) on a portion of holster sidewall (26), and adapting with the edge of a pistol to prevent upward removal of pistol).

### 2.    Claim 3

Claim 3 covers: "The holster of claim 1 wherein each of said first and second fasteners is a snap fastener." '980 patent, col. 7, lines 6-7.

### 3.    Claim 5

Claim 5 covers: "The holster of claim 1 wherein said means to engage a handgun includes a small lateral ledge adapted to engage a shoulder of a handgun when fully inserted into the holster, said ledge when engaged with a shoulder providing resistance to upward withdrawal of a handgun until a butt of a handgun is rotated rearwardly and downwardly." '980 patent, col. 7, lines 25-31.

### 4.    Claim 6

Claim 6 covers: "The holster of claim 1 wherein said first strap portion extends upwardly from said outer sidewall and over a handgun, said first strap portion preventing handgun withdrawal until said first fastener joining said first and second strap portions is opened." '980 patent, col. 7, lines 32-36.

### 5.    Claim 8

Claim 8 covers: "The holster of claim 1 molded such that said inner cavity generally fits the outside contour of a semi-automatic pistol, means in said inner cavity engaging a cartridge ejection port of a semi-automatic pistol." '980 patent, col. 7, lines 42-45.

The Model No. 2001 holster is a black leather holster manufactured by Hellweg

00CV2268

1 International Party Ltd. in Australia and sold to law enforcement agencies in the United States by

2 Hellweg Americas Law Enforcement Sales, Inc.

3      The Court interpreted the asserted patent claims in its <u>Markman</u> ruling filed on September

4 19, 2002 (Doc. No. 39).

5 **B.**     **Procedural History**

6      Safari Land filed its complaint on November 9, 2000 (Doc. No. 1) to which Hellweg filed

7 an answer on December 26, 2000. (Doc. No. 3.) On September 24, 2001, Hellweg's original

8 counsel moved to withdraw (Doc. No. 13); the Court granted its request on November 8, 2001.

9 (Doc. No. 22.) On February 28, 2002, Hellweg found new counsel. (Doc. No. 26.) On September

10 19, 2002, the Court issued its <u>Markman</u> ruling. (Doc. No. 39.)

11      Safari Land filed its present motion for partial summary judgment of patent infringement

12 on November 18, 2002 (Doc. No. 40); Hellweg moved for partial summary judgment on

13 noninfringement on December 12, 2002. (Doc. No. 51.) The Court held a hearing on the motions

14 presently before the Court on February 13, 2003.

15 **II.**    **Legal Standards**

16     **A.**     **Legal Standard for Summary Judgment in Patent Cases**

17      Summary judgment in a patent case, as in other cases, is proper under Federal Rule of Civil

18 Procedure 56 when no genuine issue of material fact exists and the movant is entitled judgment as

19 a matter of law. FED. R. CIV. P. 56(c); <u>Becton Dickinson & Co. v. C.R. Bard, Inc.</u>, 922 F.2d 792,

20 795 (Fed. Cir. 1990). A material issue of fact is a question that a jury must answer to determine

21 the rights of the parties under the applicable substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477

22 U.S. 242, 248 (1986); <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 873 (9th Cir. 1993). A dispute is

23 "genuine" only if "a jury applying [the substantive law's] evidentiary standard could reasonably

24 find for either the plaintiff or the defendant." <u>Anderson</u>, 477 U.S. at 255.

25      In considering a motion for summary judgment, the Court must examine all the evidence in

26 the light most favorable to the non-moving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654,

27 655 (1962). The moving party bears "the initial responsibility of informing the district court of the

28 basis for its motion." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

00CV2268

1    To satisfy this burden, the moving party must demonstrate that no genuine issue of material
2  fact exists for trial. Id. at 322.  However, the moving party is not required to negate those portions
3  of the non-moving party's claim on which the non-moving party bears the burden of proof. Id. at
4  323.

5    Once the moving party demonstrates that there is no genuine issue of material fact, the non-
6  moving party must designate "specific facts showing that there is a genuine issue for trial." Id. at
7  324 (quoting Fed. R. Civ. P. 56(e)).  The facts relied upon must be admissible under the rules
8  governing the admission of evidence generally, including those concerning authentication,
9  relevance, and hearsay.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550-52
10  (9th Cir. 1990).  Conclusory allegations as to ultimate facts are not adequate to defeat summary
11  judgment.  Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).

12    **B.    Legal Standard for Patent Infringement**
13    "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention,
14  within the United States or imports into the United States any patented invention during the term of
15  the patent therefor, infringes the patent."  35 U.S.C. § 271(a).

16    Determining patent infringement is a two-step process.  First, a court must interpret the
17  meaning and scope of a patent's claims.  Markman v. Westview Instruments, Inc., 52 F.3d 967,
18  976 (Fed. Cir. 1995)(en banc).  Second, a court compares the properly construed claims with the
19  accused device.  Id.  There is infringement when the accused device contains all of the limitations
20  specified in at least one claim of the patent.  Corning Glass Works v. Sumimoto Electric U.S.A.,
21  Inc., 868 F.2d 1251, 1258-59 (Fed. Cir. 1989).

22  **III.    Safari Land's Motion for Summary Judgment**
23    In its motion for summary judgment, Safari Land alleges that Hellweg's Model No. 2001
24  holster literally infringes on five of the claims of the '980 patent: claims 1, 3, 5, 6, and 8.  In
25  addition, Safari Land moves for summary judgment of Hellweg's eighteen affirmative defenses:
26  (1) failure to state a claim; (2) laches; (3) equitable estoppel; (4) patent misuse; (5) on-sale bar; (6)
27  lack of notice; (7) inequitable conduct; (8) bad faith; (9) waiver; (10) consent; (11) obviousness;
28  (12) no liability; (13) anticipation; (14) abandonment; (15) failure to invent; (16) failure to identify

7

00CV2268

1  best mode; (17) violation of Patent Rule 56; and (18) complaint uncertain. In response, Hellweg

2  has filed a cross motion for a summary judgment of non-infringement. The heart of the conflict in

3  these summary judgment motions are differing interpretations of the terms of the patent.

4      For the reasons discussed below, the Court (1) GRANTS Safari Land's motion for partial

5  summary judgment; and (2) DENIES Hellweg's motion for partial summary judgment of

6  noninfringement.

7  **A.    Literal Infringement**

8      Safari Land contends that Hellweg's Model No. 2001 holster literally infringes claims 1, 3,

9  5, 6, and 8 of the '980 patent. Claim 1 is an independent claim, while the remaining claims are

10 dependent. Hellweg challenges the infringement claim by arguing that Safari Land bases its

11 infringement analysis upon claim construction that was rejected by the Court in its Markman

12 ruling, creating an erroneous factual basis for the satisfaction of several claim elements. Thus,

13 Hellweg argues that Safari Land has not made a prima facie showing of infringement. For the

14 reasons stated below the Court finds that Hellweg's Model No. 2001 holster literally infringes each

15 of the five claims as alleged by Safari Land.

16     **1.    Claim 1**

17     a.    "a pair of substantially rigid sidewalls"

18     Just as in the '980 patent, the Model No. 2001 holster has substantially rigid inner (11) and

19 outer (40) sidewalls that are joined together along forward portion (31). The inner (11) and outer

20 (40) sidewalls are joined by two rivets resulting in joinder of the sidewalls over some length of the

21 lower rear portion of the holster.[5]

22     b.    "an inner expandable cavity and an open expandable top and upper rear portions"

23     As required by claim 1 of the '980 patent, the sidewalls of the Model No. 2001 holster

24

25

26     [5]The "lower rear portion" of the holster is "the portion extending from the lower rear corner
of the holster, up to a point near the holster's top, but not including the area between said point and
27 the holster's open top." Markman Ruling at 17. The "'point near the holster's open top' is the point
along the rear of the holster's sidewalls located just far enough from the pistol's open top to permit,
28 upon joinder at that point, the pistol's sidewalls near the open top of the holster to spread or spring
apart." Id. The meaning of lower rear portion is discussed in greater detail on p. 11-13.

00CV2268

1   define an inner, expandable[6] cavity.  The sidewalls at the top and upper rear of the holster can be

2   spread apart to change the shape of the cavity and to accommodate a pistol.  The sidewalls likewise

3   define an open, expandable top and upper rear portions[7] for accommodating a pistol.

4         c.    "first" and "second" strap portions

5         As required by claim 1, the Model No. 2001 holster has "first" (22) and "second" (35)

6   straps which are joined together by a snap over the top of a handgun.  The "first" (22) strap portion

7   extends up from adjacent the forward portion of the outer sidewall and is attached by a releasable

8   fastener (20) to the "second" strap (35) that extends up from the forward portion of the inner

9   sidewall.

10         d.    "a thumb engaging first tab"

11         Just like the '980 patent the Model No. 2001 holster features a tab (21) that can be pushed

12   by a thumb to release the "first" (22) and "second" (35) straps.

13         e.    "a third elongated strap"

14         The Model No. 2001 holster has a "third" strap (14) that extends laterally across the holster

15   and is affixed to the to the outer (40) and inner (11) sidewalls adjacent to the open expandable top,

16   and upper rear portions of the holster.  The "third" strap encircles the holster, its two ends joined

17   adjacent a rear portion of the inner sidewall by a releasable fastener, as required by claim 1.

18         f.    "a middle finger engaging second tab"

19         The "third" strap of the Model No. 2001 holster also features a tab (19) that the holster

20   wearer can press with his or her middle finger to release the fastener, as specified in claim 1.

21         g.    "slidable means attaching one end of said third strap to said inner sidewall"

22         Claim 1 requires that a slideable means be used for attaching one end of the third strap to

23

_____

24       [6]In its Markman  ruling this Court defined expandable to mean "capable of being expanded."
     Markman Ruling at 18.

25

26       [7]The "upper rear portions" of the handgun refer to the "rear portions of the holster's sidewalls
     extending from the open top of the holster, down to a point near the holster's open top, and including
     the area between said point and the holster's open top."  Markman Ruling at 17.  The "point near the

27   holster's top" is the "point along the rear of the holster's sidewalls located just far enough from the
     pistol's open top to permit, upon joinder at the point, the pistol's sidewalls near the open top of the

28   holster to spread or spring apart.  Id. at 17-18.  The meaning of upper rear portion is discussed in
     greater detail on p. 11-13.

00CV2268

1   the inner sidewall.  The '980 patent shows a pin that extends outwardly from the inner side of the

2   holster, into a slot in the third strap.  The Model No. 2001 holster uses the same technique.

3         h.      "for limited expansion"

4         The Model No. 2001 holster meets the requirement of limited expansion.  Limited

5   expansion in Claim 1 "refers to the expansion of the '980 holster that the 'slot and pin'

6   arrangement within the third strap permits when the holster wearer disengages the first, second,

7   and third straps."  <u>Markman</u> Ruling at 18.  "For limited expansion" means "permitting limited

8   expansion," not causing limited expansion.

9         Photographs of the Model No. 2001 holster, attached as Exhibits L-Q of the Clegg

10  declaration, demonstrate that expansion of the upper rear and top portions of the holster is possible,

11  indeed is necessary, to allow the wearer to tip a pistol rearward from the holster.  Moreover, since

12  the narrowest part of the handgun specified for use with the holster (a Glock 17/22) is wider than

13  the widest portion of the holster, the sidewalls must expand to allow for insertion and withdrawal

14  of the gun.

15        i.      "means...to engage a portion of the handgun"

16        Claim 1 requires that the holster have "means in said inner cavity to engage a portion of a

17  handgun in the holster to resist upward withdrawing of a handgun."  The means in the inner cavity

18  corresponds to a "ledge or protrusion within the holster" that blocks a pistol from being pulled

19  straight up and out of the holster."  <u>Markman</u> Ruling at 6.  The Model No. 2001 holster has a ledge

20  or protrusion (27) inside the holster that engages a portion of the handgun to prevent straight

21  upward withdrawal.  (Rogers Decla. ¶ 16.)

22        **2.      Claim 3**

23        Claim 3 covers the holster of claim 1 wherein each of said first (18) and second (20)

24  fasteners is a snap fastener.  In the Model No. 2001 holster, the first (18) and second (20) fasteners

25  are both snaps.

26        **3.      Claim 5**

27        Claim 5 covers the "holster of claim 1 wherein said means to engage a handgun includes a

28  small lateral ledge adapted to engage a shoulder of a handgun when fully inserted into the holster,

00CV2268

1  said ledge when engaged with a shoulder providing resistance to upward withdrawal of a handgun

2  until a butt of a handgun is rotated rearwardly and downwardly." The Model No. 2001 holster

3  meets this requirement since its small lateral edge (27) performs this function.

4      **4.    Claim 6**

5      Claim 6 covers the "holster of claim 1 wherein said first strap portion extends upwardly

6  from said outer sidewall and over a handgun, said first strap portion preventing handgun

7  withdrawal until said first fastener joining said first and second strap portions is opened." The

8  Model No. 2001 holster meets this requirement since it has a "first" strap that prevents withdrawal

9  of a handgun until the fastener joining the "first" and "second" straps is opened.

10      **5.    Claim 8**

11      Claim 8 covers the "holster of claim 1 molded such that said inner cavity generally fits the

12  outside contour of a semi-automatic pistol, means in said inner cavity engaging a cartridge ejection

13  port of a semi-automatic pistol." The Model No. 2001 pistol meets this requirement since the

14  allegedly infringing holster pictured in Exhibit F of the Clegg declaration in support of Safari

15  Land's motion for summary judgment has a label indicating that it is designed for a Glock pistol.

16      Thus, as described above, the Model No. 2001 holster meets the limitations of and literally

17  infringes claims 1, 3, 5, 6, and 8.

18

19      To refute Safari Land's allegations of literal infringement, Hellweg contends that Safari

20  Land bases its analysis on an erroneous claim construction. The Court, however, finds that it is

21  Hellweg that has misconstrued the meaning of the claims of the '980 patent as stated in the patent

22  and as interpreted by the Court's Markman ruling.

23      Hellweg argues that any portion of the holster that is open–that is, where the walls are not

24  joined–and that receives the pistol is the "top" of the holster. Thus, Hellweg contends that the

25  upper and lower rear portions of the holster are those portions that are closed, where the two

26  sidewalls are joined. Because the upper and lower rear portions are areas where the walls are

27  joined, Hellweg argues that it could not have infringed the '980 patent since the patent requires that

28  these areas be expandable and the areas that Hellweg classifies as the upper and lower rear portions

1  are joined together with rivets.  Safari Land, in contrast, argues that the upper rear portion of the

2  holster is also a portion where the walls are not joined.

3        Although the patent states that the "two sidewalls are spaced apart along open top (13),"

4  this does not mean that only the "top" of the holster has open sidewalls or that a portion of the

5  holster with spaced walls is necessarily the top.  Indeed, the terms of the '980 patent as written and

6  as interpreted by this Court in the Markman ruling[8] encompass a holster with an open top and an

7  open upper rear.[9]  Indeed, Safari Land's interpretation is correct, as the following passages from

8  the patent and the Markman ruling show.

9        First, the patent does not state that only the "top" of the holster receives the pistol; to the

10  contrary, it states that both the upper rear and the top receive the handgun.  Claim 1 requires an

11  "expandable top and upper rear portions for receiving a handgun therein."  This language indicates

12  that the upper rear receives part of the handgun.  Moreover, it receives the trigger which is on the

13  rear of the handgun when it is placed in the holster, further buttressing Safari Land's interpretation

14  of the upper rear.  As Hellweg conceives of the upper rear it can receive nothing since it is closed.

15        Second, claim 4 defines the location of the third strap in relation to the upper rear holster.

16  Claim 4 requires that the third strap have two end portions, and that the second portion overlap the

17  first end portion "between said pin and said upper rear portion of said inner sidewall."

18        Third, in the Markman ruling the Court noted that the third strap "wraps laterally around

19  the body of the holster in the manner of a belt around a person's waist."  Markman ruling at 5.  The

20  Court would not have described the wrapping as lateral if it conceived it encircling the top of the

21  holster.  The Court also described the third strap as meeting near the rear portion of the inner side

22  wall, thus associating the lateral strap with the rear, not the top, of the holster.

23        Fourth, the Court's description of the "upper rear portion" is consistent with Safari Land's

24  conception: "the rear portions of the holster's sidewalls extending from the open top of the holster,

25  down to a point near the holster's open top, and including the area between said point and the

26

27  [8]The Court did not address directly the issue facing the Court even though it described the upper and lower rear portions.

28  [9]In its Markman ruling the Court did not define the upper rear portion in terms of where the holster is open or closed.

00CV2268

1 holster's open top."

2   In sum, defendant Hellweg's conception of the "top," "upper rear," and "lower rear"

3 portions of the holster is erroneous and does not support its claim for noninfringement. The Court,

4 accordingly, denies Hellweg's motion for summary judgment on noninfringement and grants Safari

5 Land's motion for summary judgment on infringement.

6 **IV. Patent Invalidity Defenses**

7   Defendants do not oppose summary judgment on fifteen of the eighteen affirmative

8 defenses that they have pled. The Court, accordingly, grants Safari Land's motion with respect to

9 these defenses. They are: (1) failure to state a claim; (2) laches; (3) estoppel; (4) patent misuse; (5)

10 on-sale bar; (6) lack of notice; (7) complaint brought in bad faith; (8) waiver; (9) consent; (10) no

11 liability to plaintiff; (11) abandonment; (12) failure to invent; (13) failure to identify best mode;

12 (14) violation of Patent Rule 56; and (15) complaint uncertain.

13   The Court next turns to the remaining affirmative defenses.

14 **A. Invalidity**

15   Hellweg asserts that the '980 patent is invalid on two grounds: anticipation and

16 obviousness.

17   **1. Anticipation**

18   To establish anticipation (or lack of novelty in violation of 35 U.S.C. § 102), Hellweg must

19 prove that every element of the claimed invention was disclosed in a single prior art reference.

20 Glaxo Inc. v. Novopharm Ltd., 52 F.3d 1043, 1047 (Fed. Cir. 1995). Issued patents are presumed

21 valid, 35 U.S.C. § 282. A party asserting that a patent is invalid on summary judgment bears the

22 burden of proof by clear and convincing evidence. WMS Gaming, Inc. v. Int'l Game Techs., 184

23 F.3d 1339, 1355 (Fed. Cir. 1999). Evidence that is clear and convincing "could place in the

24 ultimate factfinder an abiding conviction that the truth of [the] factual contentions are 'highly

25 probable.'" Colorado v. New Mexico, 467 U.S. 310, 316 (1984).

26   Here, Hellweg has provided a list of patents without explanation as to how these patents

27 each disclose every element of any asserted claim of the '980 patent. The patents provided by

28 Hellweg do not establish anticipation by clear and convincing evidence. Indeed, none contain each

13

00CV2268

1   of the elements of claim 1, and no reasonable factfinder could find that Hellweg has sufficient

2   evidence to create a genuine issue as to whether the '980 patent is anticipated.

3        In addition, Hellweg has alleged that William Rogers, the inventor of the '980 patent, sold

4   a holster that looks very similar to the '980 patent more than one year before the filing date of the

5   '980 patent. (Hellweg Opp., Exh. H.)   The holster that appears similar to the '980 patent is

6   allegedly registered as U.S. Patent No. 4,340,437, which was issued by the PTO in 1982.  The '437

7   patent, however, describes a "moisture-insensitive molded leather holster capable of holding a

8   sidearm or other holsterable item in the holster without the necessity for keeper straps, fasteners, or

9   the like." See '437 patent, col. 1, lines 9-12.  Under 35 U.S.C. § 102(b) a patent is invalid if the

10   invention was known or used in the United States more than one year prior to the filing of the

11   patent application.

12        Hellweg's evidence of the '437 patent does not establish anticipation by clear and

13   convincing evidence.  There is nothing in the evidence presented by Hellweg connecting the

14   holster pictured in Exhibit H and the '437 patent, which describes a holster that works without

15   straps and fasteners, in contrast to the '980 patent and the holster depicted in Exhibit H which

16   depend upon straps and fasteners.  Moreover, there is no evidence that the holster shown in Exhibit

17   H existed or was being sold more than one year before Rogers filed for the '980 patent.  See, e.g.,

18   Rogers Decla. II ISO Motion, ¶¶3-5.

19        In conclusion, the Court grants summary judgment for Safari Land on this defense.

20       **2.     Obviousness**

21        Obviousness is a "defense" based on a series of underlying factual determinations: (1) the

22   scope and content of prior art; (2) the differences between the art and the claims at issue; (3) the

23   level of ordinary skill in the art; and (4) objective evidence of non-obviousness.  Graham v. John

24   Deere Co., 383 U.S. 1, 17-18 (1986).

25        Here, Hellweg argues that before the mid-1980s the prior art teachings included thumb

26   breaking straps using a snap fastener and the longstanding use of fingerbreak straps near trigger

27   guards.  Moreover, the use of protrusions in the cavity of a holster to impede vertical movement of

28   the pistol was common.  Thus, they argue, the combination of thumb and fingerbreak snaps

1   employing snap fasteners and retention ridges was obvious to one of ordinary skill in the art.  To

2   support this claim Hellweg refers to the declaration of Stephen Taylor, a former military officer

3   and current police officer who Hellweg claims is a person of "ordinary skill in the art."

4          The Court finds that Hellweg has failed to establish a prima facie showing of obviousness,

5   let alone a clear and convincing one.  Taylor does not address the factual inquiries required in an

6   obviousness inquiry; he only states his conclusory opinion on the ultimate legal issue.

7          Moreover, aside from Taylor's conclusory declaration, Hellweg bases its obviousness

8   defense on the assertion that before the mid-1980s the prior art teachings included thumb breaking

9   straps using a snap fastener, the longstanding use of fingerbreak straps near trigger guards, and the

10  use of protrusions to impede vertical movement of pistols in holsters.  These claims, at most,

11  establish the piecemeal existence in the prior art of some of the elements that comprise the '980

12  patent.  This is insignificant, however, because virtually all inventions are combinations of old

13  elements. Environmental Designs, Ltd. v. Union Oil of California, 713 F.2d 693, 698 (Fed. Cir.

14  1983).  Hellweg must do more than show that there are similar elements in separate prior art. See

15  SmithKline Diagnostics, Inc. v. Helena Laboratories Corp., 859 F.2d 878, 887 (Fed. Cir. 1988).  If

16  Hellweg wants to base an obviousness challenge on multiple prior art references, there must be a

17  showing of some "teaching, suggestion, or reason" to combine the references. Gambro Lundia AB

18  v. Baxter Healthcare Corp., 110 F.3d 1573, 1578-79 (Fed. Cir. 1997).  Indeed, the absence of a

19  suggestion to combine is dispositive in an obviousness determination. Id. at 1579.  Here, there is

20  no evidence of a suggestion or reason to combine the discrete teachings of the prior art to create the

21  '980 patent.  Thus, Hellweg has failed to establish a showing of obviousness and the Court grants

22  Safari Land's motion for summary judgment with respect to this defense.

23  **B.     Inequitable Conduct**

24         Hellweg alleges that the '980 patent is invalid because the patentee committed inequitable

25  conduct during prosecution of the '980 patent.  Hellweg claims that there are many prior art patents

26  that are more material than other patents that were considered by the PTO Examiner.  Hellweg,

27  however, neither states why these prior art patents are more material nor provides evidence that the

28  inventor was aware of the prior art references.

00CV2268

1    To state a claim for inequitable conduct for failure to disclose a material reference, the

2 applicant's actual knowledge of the reference's existence must be proved.  See Nordberg, Inc. v.

3 Telsmith, Inc., 82 F.3d 394, 397 (Fed. Cir. 1996).  There must also be clear and convincing

4 evidence that the applicant made a deliberate decision to withhold a known material reference.

5 Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1329 (Fed. Cir. 1998).

6    Here, Hellweg states that Rogers knew about a prior art patent (U.S. Patent No. 4,079,870)

7 in the early 1980s and gave it to the examiners in a prior patent application.  This patent discloses

8 an external release snap for the thumb.

9    Assuming that Rogers knew about the '870 patent during the prosecution of the '980 patent

10 and assuming that he decided not to submit it to the Patent Office, defendant would still have the

11 burden of proving that this patent was material and non-cumulative.  See, e.g., Specialty

12 Composites v. Cabot Corp., 845 F.2d 981, 991-92 (Fed. Cir. 1988).  Here, Hellweg has not

13 presented evidence that the '870 patent would have been material or non-cumulative.  To the

14 contrary, it appears that the examiners considered several patents that showed and described

15 holsters with thumb-break snap fasteners.[10]

16    Hellweg has failed to present evidence supporting an inequitable conduct defense.  The

17 Court, accordingly, grants Safari Land's motion for summary judgment with respect to this

18 defense.

### CONCLUSION

20    For the reasons stated above, the Court (1) **GRANTS** plaintiff Safari Land's motion for

21 partial summary judgment on infringement and (2) **DENIES** defendants Hellweg International,

22 Pty. Ltd. of Australia and Hellweg America's Law Enforcement Sales, Inc.'s motion for partial

23 summary judgment on noninfringement.

24    **IT IS SO ORDERED.**

25 DATED: 3/4/03

IRMA E. GONZALEZ, Judge
United States District Court

[10]See, e.g., U.S. Patent Nos. 4,273,276; 4,286,741; 4,298,150, and 4,143,798.  (Clegg Decla. Exhibit Z.)

16

00CV2268